507 P.2d 1132 (1973)
Jane K. SIMONTON, a/k/a Jane Simonton, a/k/a Jane Elizabeth Simonton, Plaintiff-Appellee,
v.
CONTINENTAL CASUALTY COMPANY, Defendant-Appellant.
No. 71-486.
Colorado Court of Appeals, Div. II.
March 20, 1973.
*1133 Madden & Strate, P. C., William J. Madden, Denver, for plaintiff-appellee.
Yegge, Hall & Evans, Edward H. Widmann, Denver, for defendant-appellant.
Selected for Official Publication.
SMITH, Judge.
Walter Lee Simonton died on April 6, 1968, as a result of either falling or jumping from an office building window. His widow, Jane Simonton, brought this action to recover an amount allegedly owing her under an insurance policy issued by defendant, Continental Casualty Company. Trial was to a jury. A verdict was returned in plaintiff's favor. Defendant appeals to this court and we affirm.
The policy in question covers death resulting from "bodily injury caused by an accident" with certain exceptions. Those losses excluded by provision of the policy which are pertinent are losses "caused by or resulting from . . . suicide or any attempt thereat by the Insured while sane, or selfdestruction or any attempt thereat by the Insured while insane . . . [or] loss caused or contributed to by sickness or disease." The policy does not define the meaning of the term "accident."

I.
The jury was instructed that an accident "is an event which is not anticipated and is unforeseeable and unexpected by the person injured or affected thereby," and that this is equivalent to saying that the event must take place "without the insured's expectation or anticipation and *1134 without design or intention or causation on his part." Defendant does not challenge this instruction, but contends that there was not sufficient evidence to support the jury finding that Walter Symington's death was an accident.
Much of defendant's evidentiary argument involves the introduction of evidence to establish conflicting presumptions. A properly certified copy of the death certificate of Walter Symington was introduced into evidence. The certificate listed the death as a suicide and entered in a block, entitled "How Injury Occurred," was the notation, "jumped from building." The Colorado Statutes provide that such a death certificate shall be prima facie evidence of the "facts" stated by the certificate. 1965 Perm.Supp., C.R.S.1963, 66-8-24. The courts have in the past, therefore, allowed the death certificate to be admitted in its entirety,[1] but have stated that even though the death certificate is prima facie evidence of the facts it recites, its evidentiary weight will depend on the source of information from which the facts were attained. National Farmers Union Life Insurance Co. v. Norwood, 147 Colo. 283, 363 P.2d 681; Robinson v. New York Life Insurance Company, 30 Colo.App. 83, 490 P. 2d 81.
There also exists a generally recognized presumption that a violent and unexplained death from external causes is accidental. Prudential Insurance Company v. Cline, 98 Colo. 275, 57 P.2d 1205; Occidental Life Insurance Co. v. United States National Bank, 98 Colo. 126, 53 P.2d 1180; Bickes v. Travelers' Insurance Co., 87 Colo. 297, 287 P. 859; Hershey v. Agnew, 83 Colo. 89, 262 P. 526. Because of the contradiction caused by application of both rebuttable presumptions to the same cause, we shall view the facts upon which the presumptions are based as we would any other evidence.
There was no dispute in the evidence concerning the decedent's use of drugs, initially as treatment for chronic pancreatitis and at times in an excessive manner. Defendant argues that the jury must have believed plaintiff's circumstantial evidence which was designed to show that decedent, while in a state of drug intoxication, fell out of a window as a result of losing his equilibrium. Defendant urges that we rule, as a matter of law, that one who intentionally consumes dangerous therapeutic drugs with knowledge of their danger, and suffers death as a result of the use of these drugs, has not died an accidental death. In support of his thesis, defendant cites several cases which hold that one who intentionally takes a dangerous drug and is aware of the dangers and nature thereof and subsequently dies from taking the drug did not die by accident.
As plaintiff points out, these cases are readily distinguishable from the present case. While death or injury from a drug overdose may be a foreseeable result of taking certain drugs, falling out of an office building window while under the influence of such drugs is not readily foreseeable. Defendant asks us to rule that one who intentionally takes a drug which has an intoxicating effect and who is aware of this effect cannot, as a matter of law, claim that injuries in some way related to such drug intoxication are accidental. Such a holding would substantially alter our Supreme Court's established rule relating to accidents. Reed v. United States Fidelity & Guaranty, Colo., 491 P.2d 1377.
In Reed, the court determined that a result may be said to be an accidental result where such result is not the natural or probable consequence of the means which *1135 produced it, where the result does not ordinarily follow and cannot be reasonably anticipated from the act, and where the actor did not intend to produce the result. The instructions given in the instant case adequately set forth this rule. It certainly cannot be said as a matter of law that it is either natural or probable that a man in a state of drug intoxication would, as a probable consequence thereof, fall through an open window in an office building. Falling through an open office building window does not ordinarily follow, nor can it be reasonably anticipated, from drug intoxication. Neither can it be argued that the actor would intend by taking the drugs to cause himself to fall through the window.
Whether the death met the criteria of being accidental was an issue properly submitted to the jury. The determination of the jury finds support in the evidence, and it will not be disturbed on review.

II.
Defendant urges that a drug dependency or drug addiction should be held to be, as a matter of law, a "sickness or disease" under the terms of the policy provision which excludes from coverage "loss caused or contributed to by sickness or disease." The question of whether decedent's drug dependency was a "sickness or disease" was a question of fact for the jury. Reed v. United States Fidelity & Guaranty Co., supra. The jury was instructed concerning the policy exclusion and its terms. Thus, in order to have reached the conclusion it did, the jury must have determined that the drug dependency of the deceased was not a sickness or disease.
This conclusion is supported by the evidence which demonstrated that decedent was using drugs for treatment of pain caused by pancreatitis. Decedent had been using drugs in this way for approximately ten years, and, although there were instances when abuse of the drugs did result in decedent's intoxication, the evidence indicates these were only isolated incidents. The factual finding of the jury is supported by the evidence, and we will not disturb it.

III.
Defendant complains that certain testimony by decedent's brother about a conversation which occurred about ten days before the fatal occurrence should have been excluded as hearsay. Specifically, defendant contends that the brother should not have been allowed to state that he asked decedent where he hid his drugs and to relate that decedent answered him as follows:
"Don't worry about it. I keep them in the window sill outside my office. Nobody knows they are there."
Defendant argues that this testimony was offered to prove the truth of the matter stated, thereby allowing the jury to speculate that the deceased fell while reaching for drugs on the window sill.
The reason for decedent's going to his old office and opening the window was a crucial issue in the trial of this case. Obviously, decedent could not enlighten the jury as to his motives. This situation is analogous to that occurring where the issue involves a testator's intent to revoke a previous will by a subsequent instrument. In such case, testimony which would normally be excluded as hearsay is admitted for the purpose of determining the intention of the testator. Whitney v. Hanington, 36 Colo. 407, 85 P. 84. See also Hutchins and Slesinger, Some Observations on the Law of EvidenceState of Mind to Prove an Act, 38 Yale L.J. 283. In a non-testamentary setting, evidence in the nature of the testimony in question was allowed in Alexander Film Co. v. Industrial Commission, 136 Colo. 486, 319 P.2d 1074. In that case a cameraman was allowed to testify that a film director had told him that he would be spending that evening in his motel room revising the script for the next day. The court upheld the award of the Industrial Commission which was based on the finding that when the director was fatally struck by a motor *1136 vehicle as he was crossing a highway between a restaurant and his motel, he was killed in the course of his employment with the film company.
Generally, where a witness has no personal knowledge of a fact, he should not be allowed to give testimony concerning that fact because there would then be reliance on the out-of-court declaration of another and the normal safeguards of oath, confrontation and cross-examination would be precluded. C. McCormick, Evidence § 246 (2d ed.). The cases cited above demonstrate that the courts have accepted the concept that a person's intentions may be reflected by the declarations of that person. These declarations are therefore admissible not for the proof of the facts stated by the declaration, but to demonstrate the state of mind of the declarant. When offered for this purpose, the hearsay rule is not applicable to such a declaration. Prudential Insurance Co. v. Sommers, 148 Colo. 212, 365 P.2d 544.
In determining whether to admit evidence, such as the testimony in question, the court must make a judgment based on a weighing of the materiality and relevance of the testimony for a limited purpose against the possibility that in spite of an instruction by the court to the contrary, the jury might consider the statement for the truth of the facts it contains. See Hinton, States of Mind and the Hearsay Rule, 1 U.Chi.L.Rev. 394.
In the present case, the issue of why decedent went to an empty office on the eleventh floor of a building and opened a window was a material issue relevant to the determination of the nature of decedent's death. The declaration in question allegedly was made by the deceased as he was lunching with his brother ten days before his death. The declaration was made in circumstances which were not suggestive of motives for deception on the part of the decedent. The perception, memory, and sympathies of the brother were all proper subjects of cross-examination. The trial court instructed the jury, at the time the evidence was admitted, that the declaration could be considered only for the inference it might contain concerning the state of mind of the deceased. This evidence was of probative value on that issue. Since the trial court took adequate precautions in admitting this testimony, including instructing the jury as to the manner and purpose for which the evidence might be considered, the trial court did not err in admitting evidence of the declaration for the limited purpose of demonstrating decedent's possible intention or state of mind.

IV.
Defendant also asserts as error the refusal of the trial court to allow evidence concerning other insurance policies owned by the decedent before his death. In a situation of this type, the trial court must weigh the prejudicial effect of such evidence against its relevancy to the issue of whether the death was accidental or suicidal. Diel v. Beekman, 7 Wash.App. 139, 499 P.2d 37. Villegas v. Bryson, 16 Ariz. App. 456, 494 P.2d 61. At a hearing before the judge outside the presence of the jury, defendant informed the court that the policies were at least three years old at the time of decedent's death. Thus, the probative value of such evidence is virtually non-existent, and the discretionary decision of the trial court to exclude this evidence as irrelevant and potentially prejudicial was not error.
Judgment affirmed.
SILVERSTEIN, C. J., and PIERCE, J., concur.
NOTES
[1] We are not unaware of the recent decision, Lockwood v. Travelers Insurance Co., Colo., 498 P.2d 947, announced July 3, 1972, in which the Colorado Supreme Court abrogated the rules announced above to the extent of requiring that in cases such as this one the conclusionary statements in the death certificate must be excised prior to admitting the certificate into evidence. The court declared the effect of the Lockwood decision to be prospective, however, and the instant case was tried prior to the Lockwood decision.